FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
## APPELLATE DIVISION

| | |
|---|---|
| BLUEBEARD'S CASTLE, INC., | ) |
| | ) |
| *Appellant,* | ) D.C. Civ. App. No. 2002-154 |
| | ) |
| v. | ) Super. Ct. Civ. No. 925/1997 |
| | ) |
| LAWRENCE HODGE, MARIA HODGE | ) |
| and GOVERNMENT OF THE VIRGIN | ) |
| ISLANDS, | ) |
| | ) |
| *Appellees.* | ) |
| | ) |

RECEIVED
2009 APR -1 PM 3:30
CLERK OF THE DISTRICT COURT V.I.

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: The Honorable Rhys S. Hodge

Considered: February 20, 2009
Filed: April 1, 2009

BEFORE: **RAYMOND FINCH**, Judge of the District Court of the Virgin Islands; **JUAN R. SÁNCHEZ**, Judge of the District Court of the Eastern District of Pennsylvania, sitting by designation; **JULIO A. BRADY**, Judge of the Superior Court, Division of St. Croix, sitting by designation.

ATTORNEYS:

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
        *For the Appellant,*

**Denise M. Francois, Esq.**
St. Thomas, U.S.V.I.
        *For Appellees Lawrence Hodge and Maria Hodge.*

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 2

**Douglas J. Juergens, Esq.**
St. Thomas, U.S.V.I.
       *For Appellee Government of the Virgin Islands.*

---

| **MEMORANDUM OPINION** |
|---|

**PER CURIAM,**

    Bluebeard's Castle, Inc. ("BCI") appeals from (1) a judgment of the Superior Court of the Virgin Islands[1] in favor of the appellees; (2) an award of attorney's fees and costs; and (3) an order denying BCI's renewed motion for judgment as a matter of law.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

    BCI is a Virgin Islands corporation that operates a hotel known as Bluebeard's Castle Hotel on St. Thomas, U.S. Virgin Islands.  The hotel sits on land known as Taarneberg, Bluebeard's Castle Property, King's Quarter (the "BCI Property"), which BCI purchased in 1974 by quitclaim deed from Henry H. Reichhold.  Reichhold had purchased the BCI Property by quitclaim deed in

---

    [1]  At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges.  Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands.  *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and judge of the Superior Court.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 3

1959 from Antilles Enterprises, Inc., which, in turn, had

purchased it by quitclaim deed in 1954 from the United States

Government.  The United States had acquired the BCI Property by

quitclaim deed in 1933 from City Bank Farmers Trust Co.,

Frederick H. Nies and Benedict S. Wise, as Trustees under the

Last Will and Testament of James Buchanan Nies.

Lawrence and Maria Hodge (together, the "Hodges") are the

owners of certain real property located at Parcel 39c Estate

Taarneberg, St. Thomas, U.S. Virgin Islands ("Parcel 39c").  The

Hodges acquired Parcel 39c by warranty deed in December 1985 from

the West Indian Company Limited.

The BCI Property and Parcel 39c abut each other and are both

accessed by a road known alternatively as Frederiksberg Gade,

Street to Frederiksberg and Bluebeard's Castle Entrance Road (the

"Disputed Roadway").  The Disputed Roadway provides the only

access to Parcel 39c.

In 1994, BCI erected a gate on the western end of the

Disputed Roadway.  A sign on the gate read "Bluebeard's Castle."

For some time thereafter, the gate was open from 12:00 a.m. to

5:00 a.m.  BCI later began locking the gate twenty-four hours per

day, effectively preventing the Hodges from accessing Parcel 39c

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 4

from the west.[2]  In 1997, the Hodges discovered that BCI had also

mounted a chain on the eastern entrance to the Disputed Roadway,

thus blocking their access to Parcel 39c from the east.

In November 1997, the Hodges filed an eleven-count action

against BCI in the Superior Court.[3]  The Hodges asserted various

theories of relief and requested, among other things, injunctive

relief to prevent BCI from obstructing their access to Parcel

39c.

In January 1998, the Hodges requested an entry of default

against BCI.  After entering default against BCI, the Superior

Court held a bench trial and entered default judgment in favor of

the Hodges.  For reasons not relevant here, the default judgment

was later set aside.  BCI filed an answer.  Protracted discovery

ensued.

In January 2002, the Government of the Virgin Islands (the

"Government") filed an intervenor's complaint against BCI.  The

Government sought a declaration that the Disputed Roadway is

public, a mandatory injunction to compel BCI to remove any

---

[2]  The Hodges assert that the permanent closure of the gate
began in 1997.  BCI contends that the permanent closure began in
1995.  The trial court found that the permanent closure began in
November 1996.

[3]  Before filing suit, the Hodges wrote several letters to
BCI from 1994 through 1997, protesting the presence of the gate
and the chain.  Those discussions did not result in a settlement.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 5

barriers blocking public access to the Disputed Roadway and a permanent injunction to prevent BCI from erecting or maintaining any barrier on the Disputed Roadway.

BCI thereafter moved for summary judgment, contending that the Disputed Roadway is not a public road; the Hodges failed to prove the elements of an easement by prescription; and two of the Hodges' claims -- in Counts I and II of the complaint -- were barred by a two-year statute of limitations. The trial court denied BCI's motion in all respects, finding that genuine questions of material fact remained for trial.

A jury trial was held from May 28, 2002 to June 3, 2002. By stipulation of the parties, the jury's findings were advisory only. In a special verdict, the jury made the following findings: the Disputed Roadway is a public road owned by the Government; BCI intentionally and unreasonably interfered with the Hodges' use and enjoyment of Parcel 39c; BCI intentionally and unreasonably interfered with the Hodges' right as members of the public to use and Disputed Road; and the Hodges' damages were proximately caused by BCI. The jury recommended awarding the Hodges compensatory damages in the amount of $6,000 and punitive damages in the amount of one dollar.

On June 17, 2002, the trial court issued a memorandum opinion, setting forth its findings of fact and conclusions of

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 6

law.  The trial court concluded that the Disputed Roadway is a
public road and that BCI interfered with the public's right to
use it.  The trial court issued a permanent injunction to prevent
BCI from obstructing access to the Disputed Roadway.  The trial
court also awarded the Hodges $6,000 in compensatory damages and
one dollar in punitive damages.

BCI subsequently filed a renewed motion for judgment as a
matter of law pursuant to Federal Rule of Civil Procedure 50.
Reasoning that the jury's verdict was supported by substantial
evidence at trial, the trial court denied BCI's motion.[4]  The
trial court also awarded the Hodges $116,008.90 in attorney's
fees and costs.

This timely appeal followed.  BCI submits the following
three main issues, with numerous subsidiary issues, for our
review: (1) whether the trial court erred in denying BCI's motion
for summary judgment on statute-of-limitations grounds with
respect to Counts I and II of the complaint; (2) whether the
trial court erred in denying BCI's motion for judgment as a
matter of law; and (3) whether the trial court abused its
discretion in its award of attorney's fees and costs.

_____

[4]  The trial court also denied BCI's motion for a new trial
on the issue of damages.  BCI had argued that the damages awarded
by the jury were unreasonable, inadequate and against the weight
of the evidence.  The trial court concluded that a new trial was
unwarranted.

*Bluebeard's Castle v. Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 7

## II.   <u>DISCUSSION</u>

### A.   Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).[5]

### B.   Standard of Review

#### 1.   Summary Judgment

We exercise plenary review over the trial court's denial of a motion for summary judgment. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir. 1993). This means that we "review the facts in the light most favorable to the party against whom summary judgment was entered." *Id.; see also Stouts-Brunswick Assocs. Ltd. P'ship v. Bankers Trust Co.*, 173 Fed. Appx. 109, 111 (3d Cir. 2006). "On review 'the appellate court is required to apply the same test that the lower court should have utilized.'" *Carty v. Hess Oil Virgin Islands Corp.*, 78 F. Supp. 2d 417, 419 (D.V.I. App. Div. 1999) (quoting *Tree of Life Distributing Co. v. National Enterprises of St. Croix, Inc.*, Civ. No. 1997-30, 1998 U.S. Dist. LEXIS 17980, at *6

---

[5]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp.2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2003) (preceding V.I. CODE ANN. tit. 1).

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 8

(D.V.I. App. Div. Nov. 5, 1998), *aff'd*, 208 F.3d 206 (3d Cir.

2000)).

Summary judgment is appropriate if "the pleadings, the

discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789

F.2d 230, 232 (3d Cir. 1986).

"Where the trial court's determination was based on its

application of legal precepts or interpretation of a statute, our

review is also plenary." *Wing-It Delivery Servs. v. V.I. Cmty.*

*Bank*, Civ. App. No. 2000-176, 2005 U.S. Dist. LEXIS, at *5

(D.V.I. App. Div. June 24, 2005) (citing *HOVIC v. Richardson*, 894

F. Supp. 211, 214 (D.V.I. App. Div. 1995)). "However, we review

the trial court's factual determinations for clear error ." *Id.*

(citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d

Cir. 2000)).

**2.   Judgment as a Matter of Law**

"Judgment as a matter of law may be granted only if 'as a

matter of law, the record is critically deficient in that minimum

quantity of evidence from which a jury might reasonably afford

relief.'" *Whelan v. Teledyne Metalworking Prods.*, 226 Fed. Appx.

141, 145 (3d Cir. 2007) (quoting *Trabal v. Wells Fargo Armored*

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 9

*Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)); Fed. R. Civ. P.
50(a). "Although judgment as a matter of law should be granted
sparingly, a scintilla of evidence is not enough to sustain a
verdict of liability. The question is not whether there is
literally no evidence supporting the party against whom the
motion is directed but whether there is evidence upon which the
jury could properly find a verdict for that party." *Lightning
Lube, Inc.* v. *Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)
(internal quotations and citations omitted).

"The standard of review for an order granting or denying a
motion for judgment as a matter of law is plenary." *Curley* v.
*Klem*, 499 F.3d 199, 205 (3d Cir. 2007) (citing *Lightning Lube*, 4
F.3d 1153 at 1166). Our "review of a jury's verdict is limited
to determining whether some evidence in the record supports the
jury's verdict." *LePage's, Inc.* v. *3M*, 324 F.3d 141, 145 (3d Cir.
2003) (citing *Swineford* v. *Snyder County*, 15 F.3d 1258, 1265 (3d
Cir. 1994) ("A jury verdict will not be overturned unless the
record is critically deficient of that quantum of evidence from
which a jury could have rationally reached its verdict.")).

### 3.   Attorney's Fees

We review the reasonableness of the trial court's award of
attorney's fees for abuse of discretion. *People Against Police
Violence* v. *City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008)

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 10

(citing *City of Morris v. Nationalist Movement*, 273 F.3d 527, 535

(3d Cir. 2001)).   The trial court's application of law in

deciding the fee award is subject to plenary review. *J.O. ex rel.*

*C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir.

2002).

## III. <u>ANALYSIS</u>

### A.   The Trial Court's Denial of BCI's Motion for Summary Judgment as to Counts I and II of the Complaint

BCI first argues that the trial court erred in denying its

motion for summary judgment as to Counts I and II of the Hodges'

complaint on statute-of-limitations grounds.   BCI raised the

statute-of-limitations defense in both its motion for summary

judgment and its motion for judgment as a matter of law.   In its

motions, BCI contended that a two-year statute of limitations

applied to both counts.   The Hodges countered that a six-year

limitations period governed the timeliness of their claims.

To determine what limitations period applies to the Hodges'

claims, we must first ascertain the nature of those claims.

Neither Count I nor Count II of the Hodges' complaint

indicates a source of law for the claims asserted or otherwise

specifies a particular cause of action.   To the extent Count I of

the complaint asserts that BCI intentionally deprived the Hodges

of the use and enjoyment of Parcel 39c, that count appears to

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 11

assert a private nuisance claim under section 821D of the

Restatement (Second) of Torts.[6] *See* Restatement (Second) of Torts

§ 821D (1979) ("A private nuisance is a nontresspassory invasion

of another's interest in the private use and enjoyment of

land."). To the extent Count II asserts that BCI intentionally

obstructed and interfered with the Hodges' right to use a public

road, namely, the Disputed Roadway, that count appears to assert

a public nuisance claim under section 821B of the Restatement.

*See* Restatement (Second) of Torts § 821B ("A public nuisance is

an unreasonable interference with a right common to the

general.").

Having determined that the claims in Counts I and II are

nuisance claims, we must next determine what limitations period

applies to those claims. Title 5, Section 31 of the Virgin

Islands Code prescribes limitations periods for all civil

actions. *See* V.I. Code Ann. tit. 5, § 31. Section 31 does not

explicitly prescribe a limitations period for nuisance claims.

*See In Re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243,

1255 (D.V.I. 1993) ("Unlike other jurisdictions, the Virgin

Islands' legislature has declined to provide a special limitation

_____

   [6] Absent local law to the contrary, the Restatements
provide the substantive law of the Virgin Islands. V.I. Code Ann.
tit. 1, § 4; *see also Government of the Virgin Islands, Bureau of
Internal Revenue v. Lansdale*, 172 F. Supp. 2d 636, 645 (D.V.I.
2001).

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 12

period for actions for tortious injury to land."). Section 31

does, however, impose a two-year limitations period on "[a]n

action . . . for any injury to the person or rights of another

not arising on contract and not herein especially enumerated . .

. ." V.I. CODE ANN. tit. 5, § 31(5)(A). Moreover, this Court,

sitting in its trial capacity, has applied a two-year limitations

period to nuisance claims. *See, e.g.*, *In Re Tutu Wells*, 846 F.

Supp. at 1255. Thus, a two-year limitations period governs the

Hodges' public and private nuisance claims asserted in Counts I

and II.

To determine whether the claims asserted in Counts I and II

are barred by the two-year statute of limitations, we must

determine when those claims began to accrue. The trial court

applied the discovery rule and the continuing torts doctrine, as

articulated and applied by this Court in its trial capacity in *In*

*re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 984 (D.V.I.

1995) (explaining that "a plaintiff's claim begins to accrue at

the latest time provided by either rule").

The discovery rule "operates to prevent the relevant statute

of limitations, here the two year statute of limitations, from

beginning to run." *Id.* at 985. "Under the rule, the statute of

limitations will start to run at the time that two conditions are

satisfied: (1) when the plaintiff knew or should have known that

*Bluebeard's Castle v. Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 13

he had suffered a harm and (2) when the plaintiff knew or should
have known the cause of his injury . . . ." *Id.* "[B]oth of these
determinations are made using an objective, reasonable person
standard." *Id.*

Under the continuing torts doctrine, "when a tort involves
continuing injury, the cause of action accrues, and the
limitation period begins to run, at the time the tortious conduct
ceases." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d
Cir. 1998) (internal quotation marks and citation omitted).
"Since usually no single incident in a continuous chain of
tortious activity can fairly or realistically be identified as
the cause of significant harm, it seems proper to regard the
cumulative effect of the conduct as actionable." *Id.* "Moreover,
since one should not be allowed to acquire a right to continue
the tortious conduct, it follows logically that statutes of
limitations should not run prior to its cessation." *Id.*

Whether the continuing torts doctrine is applicable turns
first upon whether a nuisance is classified as continuing or
permanent. *See Boehm v. Chase Manhattan Bank*, Civ. No. 1999-0209,
2002 U.S. Dist. LEXIS 25238, at *11 n.4 (D.V.I. Dec. 30, 2002);
*see also Dombrowski v. Gould Elecs.*, 954 F. Supp. 1006, 1011
(M.D. Pa. 1996).

Under Virgin Islands law, when a tort involves continuing or

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 14

repeated conduct, the limitations period does not begin to run

until the date of the last injury or when the tortious conduct

ceased:

> The actor's failure to remove from land in the
> possession of another a structure, chattel, or other
> thing which he has tortiously erected or placed on the
> land constitutes a continuing trespass for the entire
> time during which the thing is wrongfully on the land
> and, . . . confers on the possessor of the land an
> option to maintain a succession of actions based on the
> theory of continuing trespass or to treat the
> continuance of the thing on the land as an aggravation
> of the original trespass.

*Restatement* (Second) *of Torts* § 161 cmt. b.

In contrast, if a nuisance is deemed permanent, the

plaintiff has but one cause of action:

> A continuing trespass must be distinguished from a
> trespass which permanently changes the physical
> condition of the land.  Thus, if one, without privilege
> to do so, enters land of which another is in possession
> and destroys or removes a structure standing upon the
> land, or digs a well or makes some other excavation, or
> removes earth or some other substance from the land,
> the fact that the harm thus occasioned on the land is a
> continuing harm does not subject the actor to liability
> for a continuing trespass.  Since his conduct has once
> for all produced a permanent injury to the land, the
> possessor's right is to full redress in a single action
> for trespass, and a subsequent transferee of the land,
> acquires no cause of action for the alteration of the
> condition of the land.

*Id.* § 162 cmt. a.

In other words, "a continuing violation is occasioned by

continual unlawful acts, not continual ill effects from an

original violation." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 15

Cir. 1982) (quotation marks and citation omitted); *see also*

*Cannon v. United States*, 338 F.3d 1183, 1193 (10th Cir. 2003)

("To determine whether a trespass or nuisance is permanent or

continuous, . . . courts 'look solely to the act constituting the

trespass [or nuisance], and not to the harm resulting from the

act.'") (applying Utah law; citation omitted); *Union Pac. R.R. v.*

*Reilly Indus.*, 4 F. Supp. 2d 860, 866 (D. Minn. 1998) (noting

that "a continuing trespass or a continuing nuisance [arises]

when a recurrence of conduct or injury is involved") (applying

Minnesota law; citations omitted); *Tri-County Business Campus*

*Joint Venture v. Clow Corp.*, 792 F. Supp. 984, 996 (E.D. Pa.

1992) (noting that "the critical distinction is whether the

injury is permanent and effects a permanent change in the

condition of the land, or whether the action concerns separate

and recurrent injuries which cannot be ascertained or estimated

so as to be brought in a single action") (applying Pennsylvania

law; citation omitted).

Courts routinely apply the continuing torts doctrine to

nuisance claims where the injury is categorized as continuing

rather than permanent. *See, e.g., Flotech, Inc. v. E. I. Du Pont*

*de Nemours Co.*, 627 F. Supp. 358, 363 (D. Mass. 1985) (noting

that the doctrine applies in nuisance and trespass actions where

the harm is classified as a continuing tort) (applying

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 16

Massachusetts law).

Courts have further found the doctrine applicable where the harm takes the form of a physical encroachment or an invasion on land that is ongoing or repeated and that may be abated. *See*, *e.g.*, *Bartleson v. United States*, 96 F.3d 1270, 1275 (9th Cir. 1996) (applying California law); *Dombrowski*, 954 F. Supp. at 1013 (noting that "invasions such as an overhanging tree branch or recurring flooding have been said to constitute continuing trespasses") (applying Pennsylvania law; citations omitted); *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883 (Mo. 1985) (finding that a nuisance is permanent "if abatement is impracticable or impossible"); *Fulton County v. Baranan*, 242 S.E.2d 617 (Ga. 1978) (suggesting that the key element in distinguishing between the two types of nuisance is abatability); *Northern States Power Co. v. Franklin*, 122 N.W.2d 26, 30-31 (Minn. 1963) ("Where a structure is erected or junk is stored and the harmful effect is one that may be abated or discontinued at any time, there is a continuing wrong so long as the offending object remains, and the courts regard such as a continuing trespass.") (internal quotation marks and citations omitted).

In applying these principles to this matter, we note that it would have been far from impracticable or impossible for BCI to

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 17

remove the gate and the chain from the Disputed Roadway.  Both

harms were thus entirely abatable.  We therefore have no doubt

that the gate and the chain are more appropriately classified as

continuing, rather than permanent, harms. *See*, *e.g.*, *Shors v.*

*Branch*, 720 P.2d 239, 243-44 (Mont. 1986) (holding that a gate

that blocked access to a river was a continuing tort because the

gate easily could have been removed); *Nelson v. C&C Plywood*, 465

P.2d 314, 325 (Mont. 1970) (holding that where the defendant's

dumping of glue waste into a drainage ditch adjacent to the

plaintiff's well could have been stopped at any time, the

nuisance was readily abatable and therefore continuing).

Because the gate and the chain constituted continuing harms,

the Hodges had two years from the time of BCI's ongoing tortious

conduct within which to recover damages.  The parties do not

dispute that the gate and the chain were obstructing the Disputed

Roadway at least as late as November 1997.  The Hodges filed

their complaint on November 19, 1997, within two years of BCI's

tortious conduct.  Accordingly, the claims asserted in Counts I

and II are not time-barred.

BCI argues that the trial court's reliance on this Court's

decision in *In re Tutu Wells* was misplaced.  In support of that

argument, BCI asserts that the Third Circuit has rejected the

continuing torts doctrine.  BCI relies on *Kichline v.*

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 18

*Consolidated Rail Corp.*, 800 F.2d 356 (3d Cir. 1986).

In *Kichline*, the plaintiff sued his employer, a railroad company, under the Federal Employers Liability Act, alleging that he had contracted a pulmonary ailment from exposure to diesel fumes in the workplace. 800 F.2d at 357. The plaintiff continued to work after learning of his condition. *Id*. The plaintiff eventually quit and brought suit several months later. *Id*. In finding the plaintiff's claims time-barred, the Third Circuit held that the statute of limitations had begun to run on those claims not when the plaintiff ended his employment, but when the plaintiff became aware that he had a pulmonary disease and was warned to avoid pollutants found at the workplace. *Id*. at 360-61. The court reasoned that the "continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy. *Id*. at 360 ("If the discovery rule is not enforced, damages can continue indefinitely, accumulating at the option of the claimant.").

Notwithstanding the fact that *Kichline* was decided well before *In re Tutu Wells*, BCI relies on *Kichline* to support the proposition that "the Third Circuit ha[s] clearly rejected" the continuing torts doctrine. [Appellant's Br. at 7.] That rather

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 19

broad assertion, however, finds no support in subsequent

decisions from the Third Circuit.  Those decisions demonstrate

that the continuing torts doctrine is still viable in this

circuit under certain circumstances. *See, e.g., Cowell v. Palmer*

*Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) ("The continuing

violations doctrine is an "equitable exception to the timely

filing requirement.'") (quoting *West v. Philadelphia Elec. Co.*,

45 F.3d 744, 754 (3d Cir. 1995)).[7]

Moreover, *Kichline* and other cases in which the Third

Circuit has found that the continuing torts doctrine did not

apply where there is evidence that the plaintiff knew or should

have known of a harm, appear limited to the particular types of

harms alleged in those cases. *See Seawright v. Greenberg*, 233

Fed. Appx. 145, 149 (3d Cir. 2007) (not precedential) (declining

to apply the doctrine in a personal injury action where the

_____

[7]  In *Cowell*, the plaintiffs alleged that a township
violated their Fourteenth Amendment due process rights by
imposing two liens on their properties. 263 F.3d at 291.
Although the statute of limitations had run since the initial
imposition of the liens, the plaintiffs argued that the liens
amounted to a continuing violation until they were lifted or
expunged. *Id.* at 293.  The Third Circuit disagreed, explaining
that "the focus of the continuing [torts] doctrine is on
affirmative acts of the defendants." *Id.*  The court explicitly
adopted the position of the Fourth Circuit, stating that "'[a]
continuing violation is occasioned by continual unlawful acts,
not continual ill effects from an original violation.'" *Id.*
(quoting *Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d
103, 106 (4th Cir. 1983)).

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 20

plaintiff was aware of the injury at the time it occurred); *Hare*

*v. Potter*, 220 Fed. Appx. 120, 134 (3d Cir. 2006) (not

precedential) (declining to apply the doctrine in a sexual

harassment suit); *American Tobacco Co.*, 161 F.3d at 154

(declining to apply the doctrine where the plaintiffs brought a

products liability action against tobacco companies seeking a

medical monitoring fund); *Kichline*, 800 F.2d at 359 (declining to

apply the doctrine where the plaintiff brought a Federal

Employers Liability Act claim).

Significantly, none of those cases involve nuisance or

trespass claims.  Such claims, as we discussed above, are widely

considered subject to the continuing torts doctrine.  Courts in

this circuit have likewise applied the doctrine to nuisance

claims. *See, e.g., Champion Labs., Inc. v. Metex Corp.*, Civ. No.

02-5284, 2005 U.S. Dist. LEXIS 37068, at *15-16 (D.N.J. July 8,

2005) (noting that the plaintiff's common-law tort claims,

including a nuisance claim, were timely filed pursuant to the

continuing torts doctrine); *Andritz Sprout-Bauer v. Beazer East*,

12 F. Supp. 2d 391, 417 (M.D. Pa. 1998) (explaining that the

continuing torts doctrine applies to trespass and nuisance

claims); *Dombrowski*, 954 F. Supp. at 1011-1012 (same); *Piccolini*

*v. Simon's Wrecking*, 686 F. Supp. 1063, 1077 (E.D. Pa. 1988)

(noting that "injury causing structures that can be changed or

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 21

repaired at a reasonable expense have been found to be of a temporary nature which may allow for a continuing tort theory").

Also noteworthy is the fact that neither *Kichline* nor any subsequent case discussing the interplay between the discovery rule and the continuing torts doctrine arises under Virgin Islands law.  In the Virgin Islands, the continuing torts doctrine clearly applies to nuisance claims such as those asserted by the Hodges. *See Boehm*, 2002 U.S. Dist. LEXIS 25238, at *11 n.4 ("Under the law of the Virgin Islands, the court must apply, if applicable, both the Discovery Rule and the Continuing Torts Doctrine in making the date-of-accrual determination. Applying each of these rules individually, a plaintiff's claim begins to accrue at the latest time provided by either rule.") (internal citation omitted); *Burton v. First Bank of Puerto Rico*, Civ. No. 554-2005, 2007 V.I. LEXIS 19, at *10-11 (V.I. Sup. Ct. July 19, 2007) (restating the continuing torts doctrine) (citations omitted).  Accordingly, BCI's argument that the continuing torts doctrine has been wholly abrogated in the Virgin Islands is unavailing.

For the reasons given above, we find that Counts I and II were not time-barred.  As such, the trial court did not err in denying BCI's motion for summary judgment.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 22

**B.    The Trial Court's Denial of BCI's Motion for Judgment as a Matter of Law**

BCI next argues that the trial court erred in denying its motion for judgment as a matter of law.[8]  BCI's main argument is that the trial court erred in determining that the Disputed Roadway is public.[9]  In BCI's view, the evidence at trial showed that the Disputed Roadway is within the boundaries of BCI's property and that any evidence to the contrary should not have been credited.  BCI's efforts to blunt the force of that contrary evidence are manifold.  Because, however, BCI essentially faults the trial court's reliance on certain evidence at the expense of other evidence, BCI's argument is really a challenge to the sufficiency of the evidence.

In their complaint, the Hodges alleged that the Disputed Roadway was a public road or, in the alternative, that they have an easement by prescription over the Disputed Roadway.  Thus, to

---

[8]  BCI specifically argues that the trial court erred in finding that the Disputed Roadway is public; finding that the Hodges proved an easement by prescription over the Disputed Roadway; finding BCI liable for public nuisance; finding BCI liable for private nuisance; and awarding punitive damages.

[9]  BCI advances four main reasons in support of that argument: the trial court ignored controlling law in reaching its decision; the trial court should not have allowed the Hodges to present the testimony of one of their expert witnesses; there is no evidence to support the boundaries of the Disputed Roadway, as found by the trial court; and the trial court erred in addressing the doctrine of estoppel in pais.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 23

prevail at trial, the Hodges -- and the Government as an intervening party -- were required to prove either of those theories.  On the record before us, we cannot be certain that they were held to their burden of proof.

The trial court concluded that the Disputed Roadway is public but did not expressly address either theory asserted by the Hodges.  Indeed, absent from the trial court's opinion is a clear articulation and application of the legal standard governing the establishment of a public road.  The rest of the record similarly sheds no light on what standard, if any, was applied.

To the extent the trial court explicitly applied any standard, it appears to have relied on a 1956 opinion of the Virgin Islands Attorney General.  That opinion is included in the annotations to Title 20, Section 1 of the Virgin Islands Code.  It provides as follows:

> Whether the Government owns a right-of-way is a question of fact determinable only by a title examination, or, if no documents are available, from evidence of public use with the consent or acquiescence of the land-owner establishing dedication, title by prescription, or an estoppel in pais.

V.I. CODE ANN. tit. 20, § 1 (citing 3 V.I. Op. A.G. 20).

Of course, the opinion of an attorney general, while persuasive, does not constitute binding law. *See Marsh v. Government of Virgin Islands*, 431 F. Supp. 800, 804 n.4 (D.V.I.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 24

1977) (attributing "no significance to the Government's prior

administrative interpretation [found in] an opinion by the Virgin

Islands Attorney General"); *Guadalupe v. Ballentine*, Civ. No.

539-1994, 1995 V.I. LEXIS 17, at *6 n.4 (V.I. Terr. Ct. Mar. 21,

1995) ("Although the Attorney General has issued numerous

opinions on this issue, it is the intent of the legislature which

is controlling in a case of statutory construction."); *In re

Richardson*, 1 V.I. 301, 333 (D.V.I. 1936).

Furthermore, the case law suggests that estoppel in pais

does not by itself create a public road.  Rather, courts have

held that a public road may be created by implied dedication,

which rests on estoppel principles. *See*, *e.g.*, *Whilden v.

Compton*, 555 S.W.2d 272, 273 (Ky. Ct. App. 1977) (holding that "a

public road can . . . be established by general and long

continued use of a passway by the public.  Sometimes the public

road is established under the theory of dedication by estoppel");

*Connell v. Baker*, 458 S.W.2d 573, 576 (Mo. Ct. App. 1970) (noting

that "a road may become a public road . . . by implied or

common-law dedication -- a doctrine predicated on equitable

estoppel or estoppel in pais") (citations omitted)[10]; *Hackert v.*

---

[10]  The *Connell* Court explained:

All that is necessary to be shown in [public road]
cases is an adverse use on the part of the public,
either for a sufficient time to create a bar under the

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 25

*Edwards*, 175 A.2d 381, 383 (Conn. Super. Ct. 1961) ("An implied

dedication, which arises by operation of law from the conduct of

the owner of property, rests upon the broad common-law principle

of equitable estoppel."); *Transue v. Croffoot*, 294 P.2d 216, 219

(Kan. 1956) ("The dedication [of a public road] may be

established in any way by which the intent of the dedicator may

be shown, even by estoppel on the part of the owner of the

land.") (citation omitted).

Here, the trial court found that BCI was equitably estopped

from asserting an ownership interest in the Disputed Roadway.  We

do not necessarily question that finding.  Significantly,

however, given the weight of authority, we cannot agree that such

a finding, on its own, supports the trial court's conclusion that

the Disputed Roadway is public.

From our reading of the record, we have distilled two other

essential findings on which the trial court relied in concluding

that the Disputed Roadway is public: (1) there is widespread

---

statute of limitations, or a user by the public under
such circumstances and for such a period of time, with
the acquiescence of the owner, as to imply on his part
a dedication of the land and a prescriptive right
thereto on the part of the public by its acceptance and
appropriation as a public highway, all of which may be
shown by facts and circumstances, as well as positive
proof.

458 S.W.2d at 576.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 26

acceptance that it is public[11]; and (2) it has always been public,

at least since the transfer of the Virgin Islands from Denmark to

the United States.

Neither the Virgin Islands Code nor the case law of the

Virgin Islands courts sets forth rules governing the

establishment of a public road.  Nor does any provision of the

Restatement (Second) of Property explain how a public road may be

created.  In the absence of such authority, we look to other

jurisdictions for guidance. *See, e.g., Serrant v. Virgin Islands*

*Empl. Sec. Agency*, 57 F.3d 334, 337 (3d Cir. 1995) (considering

the laws of other jurisdictions to define a term that was not

defined in any Virgin Islands laws); *Donohue v. Lynch*, Civ. App.

No. 1997-146, 1998 U.S. Dist. LEXIS 16228, at *7 (D.V.I. App.

Div. Oct. 9, 1998) ("Because there are few published Virgin

Islands decisions construing this statutory language, it may be

necessary at times to look to other jurisdictions in this

analysis.").

In many jurisdictions, a public road may be created in

several ways, including "(1) by laying out and acceptance of a

road by a town; (2) by dedication; and (3) by prescriptive use."

---

[11]  Specifically, the trial court concluded that the Disputed
Roadway was public because members of the public had used it
since at least 1912, the Hodges and their predecessors-in-
interest had used it for more than sixty years and the community-
at-large widely viewed it as public.

*Bluebeard's Castle v. Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 27

39 AM. JUR. 2d Highways, Streets, and Bridges § 21; *see also*
*Ankrom v. Roberts*, 126 S.W.3d 798, 801 (Mo. Ct. App. 2004) ("A
public road, excluding state roads, may be created in one of
three ways: (1) under the provisions of [state law], (2) by
prescription, or (3) by implied or common law dedication.")
(quotation marks and citation omitted); *Ladner v. Harrison County*
*Bd. of Supervisors*, 793 So. 2d 637, 639 (Miss. 2001) ("A public
road may be created in one of three ways: by prescription,
dedication, or pursuant to statutory provisions.") (citations
omitted); *H & H Brand Farms v. Simpler*, Civ. No. 1658, 1994 Del.
Ch. LEXIS 97, at *12 (Del. Ch. June 10, 1994) ("A public road may
be created in three ways: by statutory dedication and acceptance,
by common law dedication through adverse use, and by recordation
of a subdivision showing streets, the conveyance of lots by
reference to the subdivision plan and public use.") (citation
omitted); *Polizzo v. Hampton*, 494 A.2d 254, 256 (N.H. 1985) ("A
public highway may be created in any one of four ways: (1)
through the taking of land by eminent domain and the laying out
of a highway by some governmental authority; (2) through the
construction of a road on public land; (3) through twenty years
of use by the public; or (4) by dedication and acceptance.");
*Williams v. Estes Park*, 608 P.2d 810, 812 (Colo. Ct. App. 1979)
("Public roads may be created by deed, dedication, a rule and

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 28

order entered in an eminent domain proceeding, or by court decree

when past public use justifies such declaration.").

The trial court did not explicitly rely on any of the

traditional ways in which a public road may be created, as

outlined above.[12]  Importantly, we have found no authority for the

trial court's conclusion that the Disputed Roadway is public

because of its widespread acceptance as such.

We likewise find no support for the trial court's conclusion

that the Disputed Roadway is public because it was public at the

time of the transfer of the Virgin Islands from Denmark to the

United States.  To the extent that conclusion derives from the

testimony of the Hodges' expert witness, Robert Murnan

---

[12]  In its memorandum opinion, the trial court concluded that
the Hodges "and their predecessors have used the road for over 60
years to access parcel 39c . . . ." [Joint App'x Vol. I at 157.]
While that conclusion suggests reliance on prescriptive easement
principles, the opinion itself expressly articulates neither the
elements for a prescriptive easement nor findings that those
elements are satisfied in this case.

The trial court also concluded that the Hodges demonstrated
by a preponderance of the evidence and by clear and convincing
evidence that the Disputed Roadway is public.  The trial court
did not, however, point to any authority for the application of
those standards to the establishment of a public road.  Indeed,
by merely invoking such standards, any litigant could walk into
court and "prove" that any personalty or realty belongs to him
simply by presenting witness testimony to that effect by
preponderate or clear and convincing evidence.  A jury verdict in
that litigant's favor would likely be upheld on appeal so long as
the record reflected sufficient evidence to support the jury's
verdict.  For obvious reasons, such an outcome is both legally
and logically untenable.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 29

("Murnan"), the record offers us no basis on which to determine

whether Murnan was appropriately qualified as an expert or

whether the methods he used were reliable.

The qualification of a witness as an expert is governed by

Federal Rule of Evidence 702.[13]  "Rule 702 embodies a trilogy of

restrictions on expert testimony: qualification, reliability and

fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)

(citations omitted).  "By means of a so-called 'Daubert hearing,'

the [trial] court acts as a gatekeeper, preventing opinion

testimony that does not meet the requirements of qualification,

reliability and fit from reaching the jury." *Id.* (citation

omitted).

Here, over BCI's objection, the trial court permitted Murnan

to testify as an expert on real estate law and, more

particularly, about the so-called "King's Road theory."[14]  While

the record reflects that the trial court admitted Murnan as a

---

[13]  The Federal Rules of Evidence apply in proceedings before
the Superior Court. *See* Super. Ct. R. 7.

[14]  Murnan testified that according to the King's Road
theory, the King of Denmark owned all land on St. Thomas during
the Danish colonial era.  Murnan further testified that, over
time, the king conveyed his land to various parties but kept for
himself the roads in between the conveyed parcels.  Those roads
were known as the "King's Roads," and became public roads upon
the United States' purchase of St. Thomas from Denmark in 1917.
Murnan testified that the Disputed Roadway is one such public
road.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 30

general expert on real estate law -- BCI did not object to his

qualification as such -- there is no evidence that the trial

court made findings with respect to Murnan's qualifications to

testify about the King's Road theory, the reliability of such

testimony or the helpfulness of such testimony to the finder of

fact. *Cf. Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (10th

Cir. 1998) ("Rule 104(a) requires the judge to conduct

preliminary fact-finding and to make a 'preliminary assessment of

whether the reasoning or methodology underlying the testimony is

scientifically valid and of whether that reasoning or methodology

properly can be applied to the facts in issue.') (quoting *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93

(1993)). As a consequence, to the extent the trial court's

conclusion that the Disputed Roadway has always been public is

predicated on Murnan's testimony about the King's Road theory, we

are left with an unreviewable record. *See, e.g., United States v.*

*Mitchell*, 365 F.3d 215, 233 (3d Cir. 2004) ("Disagreement arises

about the standard of review where, as here, the District Court

made no findings of fact to support its admission of the

testimony; indeed, after the lengthy *Daubert* hearing, the

District Court elected not to make findings of fact or

conclusions of law (written or oral), and simply ruled from the

bench.").

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 31

Although we may affirm a decision "on any ground supported

by the record," *In re Teleglobe Communications Corp.*, 493 F.3d

345, 385 (3d Cir. 2007), we decline to do so where, as here, we

cannot discern any clear standard governing the trial court's

decision. *See, e.g.*, *United States ex rel. Bledsoe v. Cmty.*

*Health Sys.*, 342 F.3d 634, 650 (6th Cir. 2003) ("[W]e generally

do not consider on appeal an issue not discussed by the district

court, unless the issue is presented with sufficient clarity and

completeness and its resolution will materially advance the

progress of . . . litigation.") (other alteration, quotation

marks and citation omitted).  We are especially loath to do so

here given the absence of definitive Virgin Islands law on the

establishment of a public road.  Under these circumstances, we

find that reversal and remand are appropriate.[15]  *See, e.g.*, *Cabell*

*v. Chavez-Salido*, 454 U.S. 432, 441 (1982) (reversing and

remanding where, *inter alia*, "[t]he District Court failed to

articulate any standard in reaching [its] conclusion"); *Country*

*Kids 'N City Slicks v. Sheen*, 77 F.3d 1280, 1282-83 (10th Cir.

1996) (vacating and remanding where the appellate court could not

---

[15]  We do not mean to suggest that a new trial is necessarily
warranted.  We leave that determination to the sound discretion
of the trial court.  We do, however, note that to the extent the
trial court's application of the law governing the establishment
of a public road is predicated on facts not found in the record
as it now exists, additional fact-finding may be required.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 32

"discern whether the district court utilized the correct legal standard . . . ."); *Shepherd v. ABC*, 62 F.3d 1469, 1478 (D.C. Cir. 1995); *United States v. Claros*, 17 F.3d 1041, 1046 (7th Cir. 1994) (vacating and remanding where "we cannot discern from the record before us the standard [applied by] the district court . . . .").

**C.    The Trial Court's Award of Attorney's Fees and Costs**

BCI's argues that the trial court abused its discretion in awarding the Hodges attorney's fees and costs.

Virgin Islands law allows for the recovery of the following fees and expenses:

> (1) Fees of officers, witnesses, and jurors;
> (2) Necessary expenses of taking depositions which were reasonably necessary in the action;
> (3) Expenses of publication of the summons or notices, and the postage when they are served by mail;
> (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure;
> (5) Necessary expense of copying any public record, book, or document used as evidence in the trial; and
> (6) Attorney's fees as provided in subsection (b) of this section.

V.I. CODE ANN. tit. 5, § 541(a).  The statute further provides that "there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto . . . ." *Id.* at (b).

"For work to be included in the calculation of reasonable

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 33

attorneys' fees, the work must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Planned Parenthood v. AG*, 297 F.3d 253, 266 (3d Cir. 2002) (quoting *Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546, 561 (1986)). A trial court "must explain on the record the reasons for its decisions." *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990). "If the [trial] court's fee-award opinion is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000).

In this matter, the Hodges sought $112,102.50 in attorney's fees and $10,412.81 in costs. The trial court found most of the Hodges' requested fees and costs reasonable. The trial court noted that this matter raised particularly complex and novel questions of law, included several alternative claims and involved an intervenor. The trial court further noted that BCI raised several counterclaims, that motion practice was extensive and that counsel exhibited great skill.

In light of these considerations, the trial court found the lion's share of the Hodges' requested fees and costs reasonably expended. The trial declined, however, to award fees for the 45.75 hours billed by a paralegal employed by the Hodges'

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 34

counsel, and 29.7 hours spent in connection with an expert report

and testimony that were not admitted at trial.  Thus, the trial

court ordered BCI to reimburse the Hodges for $110,302.50 in

attorney's fees.  The trial court also deducted $3,000 in costs

sought by the Hodges, and awarded $5,706.40 in costs.  In total,

the trial court ordered BCI to reimburse the Hodges for

$116,008.90 in attorney's fees and costs.

There is no question that the Hodges was the prevailing

party in this matter, as contemplated by the Virgin Islands Code.

*See* V.I. CODE ANN. tit. 5, § 541(b).  For the reasons given below,

however, we find that several items for which the Hodges sought

and were awarded reimbursement are unreasonable.

For instance, the Hodges sought reimbursement for

conferences and communications between their own attorneys and

legal staff.  Such expenses are duplicative and are not to be

included in an assessment of reasonable fees. *See Morcher v.*

*Nash*, 32 F. Supp. 2d 239, 241 (D.V.I. 1998) ("Multiple lawyer

conferences, not involving opposing counsel . . . involve

duplicative work."); *see also, e.g.*, *Staples v. Ruyter Bay Land*

*Partners, LLC*, Civ. No. 2005-11, 2008 U.S. Dist. LEXIS 9359, at

*5 (D.V.I. Feb. 6, 2008).  In addition to such duplicative work,

the Hodges sought reimbursement for certain items that either

appear to be unrelated to this litigation or are so vague that

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 35

their relationship to this litigation is indeterminable.  Such
entries are unreasonable and thus are not compensable. *See, e.g.,*
*Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir.
2001) (noting that a fee award should be reduced where "the fee
petition inadequately documents the hours claimed") (citation
omitted); *Powell v. SEPTA*, Civ. No. 05-6769, 2007 U.S. Dist.
LEXIS 44758, at *19-20 (E.D. Pa. June 18, 2007) ("Plaintiff's
counsel is improperly seeking to recover attorney's fees for
matters unrelated to this litigation.").

The record shows that many of the conferences and
communications among the Hodges' counsel and staff, as well as
the entries that are at least potentially unrelated to these
proceedings, are combined with otherwise compensable activities.
Such entries "are vague and 'do not indicate the purpose for
which the attorneys engaged in [the designated] activity.'"
*Morcher*, 32 F. Supp. 2d at 242 (quoting *Good Timez v. Phoenix*
*Fire & Marine Ins. Co.*, 754 F. Supp. 459, 463 n.6 (D.V.I. 1991)
(criticizing overly general itemization that contained "many
entries in which two or more different kinds of legal work were
lumped together")).  The record does not reflect whether the
trial court accounted for these undifferentiated entries by
reducing the fee award. *Cf. Krueger Associates, Inc. v. American*
*District Telegraph Co.*, 247 F.3d 61, 69 (3d Cir. 2001) (affirming

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 36

the district court's reduction of fees to reflect, *inter alia,*
"time that the court considered excessive or redundant").  The
trial court's failure to account for such entries constitutes an
abuse of discretion.

In addition to challenging the above itemizations, BCI takes
issue with the trial court's award of attorney's fees and costs
that the Hodges incurred in obtaining a default judgment against
BCI and in challenging BCI's efforts to vacate that default
judgment.  BCI provides no support, however, for its contention
that because the default judgment was vacated, "the Hodges were
not the prevailing party as to that work and it should have been
excluded from any fee award in this case." [Appellant's Br. at
43-44.]

The starting point in our analysis, as always, is the text
of the statute. *See Smith v. City of Jackson,* 544 U.S. 228, 248
(2005); *United States v. Hodge,* 321 F.3d 429, 436 (3d Cir. 2003).
As noted earlier, Virgin Islands law authorizes the award of
attorney's fees and costs "to the prevailing party *in the
judgment* . . . in a civil action." *See* V.I. CODE ANN. tit. 5, §
541 (emphasis supplied).  While the plain language of the statute
appears to indicate that attorney's fees and costs may be awarded
to the prevailing party on a particular judgment only, the case
law suggests otherwise.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 37

In *John v. Maldonado*, Civ. No. 536-1988, 1991 V.I. LEXIS 13
(V.I. Terr. Ct. June 11, 1991), for instance, the plaintiff
signed a contract for the purchase of land and submitted payment
to the defendant landowner. 1991 V.I. LEXIS 13, at *2. The
defendant subsequently refused to execute the contract. *Id.* The
plaintiff wrote several times to the defendant to have his
payment returned. *Id.* at *4-5. The defendant repeatedly refused
to return the payment. *Id.* Consequently, the plaintiff sued the
defendant, but the parties settled before trial. *Id.* at *5-6.
The plaintiff thereafter sought reimbursement for attorney's fees
and costs he incurred in maintaining the suit before it settled.
*Id.* at *6.

The former Territorial Court held that the plaintiff could
recover fees and costs. Specifically, the court concluded that
the plaintiff could be considered a prevailing party, as
contemplated by the Virgin Islands Code, because he had recovered
the money sought in his complaint. *Id.* at *7. Significantly, the
court reasoned that the plaintiff "tried to avoid litigation by
writing [the defendant] several letters demanding the return of
his payments on the land contract. It is equally evident,
however, that [the defendant] left [the plaintiff] no recourse

Bluebeard's Castle v. Hodge, et al.
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 38

but to file suit." *Id.* at *8.[16]

Similarly, in *Melendez v. Rivera*, Civ. No. 10-1988, 1988
V.I. LEXIS 35 (V.I. Terr. Ct. Oct. 28, 1988), the parties engaged
in litigation as a result of a custody dispute, but settled
before trial. *Id.* at *3.  The respondent subsequently sought
attorney's fees and costs. *Id.* at *4.  The petitioner argued that
there was no prevailing party by virtue of the settlement. *Id.* at
*2.  The Territorial Court disagreed, finding for the respondent
and awarding fees and costs. *Id.* at *9.  The court reasoned as
follows:

> While as a rule the prevailing party is considered to
> be the one in whose favor a decision or verdict is
> rendered and a judgment is entered, the term may be
> construed more broadly.  The test is whether a party
> has achieved at least some of the benefits which were
> sought in the litigation, even if a judgment is not
> finally obtained.

*Id.* at *5 (citations omitted).

Read in conjunction, *John* and *Melendez* suggest that Virgin
Islands courts favor an expansive interpretation of the Virgin
Islands fee-shifting statute.  We find these decisions persuasive

---

[16]  BCI rejects the applicability of the decision in *John*,
asserting that while the plaintiff in that case had no other
recourse than to bring suit, the Hodges could have settled their
claims with BCI.  For reasons discussed elsewhere in this
opinion, the Court finds the availability of settlement offers
immaterial to whether the trial court abused its discretion in
awarding the Hodges fees and costs actually incurred in this
litigation.

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 39

as applied to the facts of this matter.  Accordingly, we see no

merit in BCI's assertion that the fees and costs the Hodges

incurred in connection with the default judgment proceedings are

not compensable.  BCI offers us no convincing authority to

conclude otherwise.

BCI also argues that the trial court abused its discretion

because "the judgment finally obtained was not more favorable

than either of the settlement offers [BCI] made . . . ."

[Appellant's Br. at 41-42.]  BCI further argues that "[i]f the

Hodges had accepted [BCI's] first offer they would have received

their non-exclusive right to use the road, plus they would have

saved themselves and [BCI's] all of the fees and costs generated

in this matter after April 20, 2001, not to mention all of the

time and expense invested in this case by the trial court." [*Id.*

at 42.]

In essence, BCI asserts that the Hodges should be penalized

for litigating their claims to a final judgment rather than

accept a settlement offer they found inadequate.  BCI offers no

relevant support for that assertion.  Significantly, that

assertion fails to identify how the trial judge abused his

discretion in awarding attorney's fees and costs.

To the extent BCI relies on Rule 68 of the Federal Rules of

Civil Procedure, that reliance is misplaced.  Rule 68 provides,

*Bluebeard's Castle* v. *Hodge, et al.*
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 40

in pertinent part:

> More than 10 days before the trial begins, a party
> defending against a claim may serve on an opposing
> party an offer to allow judgment on specified terms,
> with the costs then accrued.
>
> . . . .
>
> If the judgment that the offeree finally obtains is not
> more favorable than the unaccepted offer, the offeree
> must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.

Neither of the settlement offers BCI made to the Hodges
conforms with Rule 68's dictates. The first such offer did not
include damages, and thus was not more favorable than the
judgment the Hodges obtained. The second such offer was made
fewer than ten days before trial began.

BCI's final challenge to the trial court's fee award calls
into question the practice of the Hodges' counsel of billing in
quarter-hour increments. BCI maintains that such increments
could result in "rounding up" entries. However, BCI "does not
point to any specific instances in [the Hodges'] fee petition
which show an artificial inflation of attorney hours expended."
*See, e.g.*, *Debose v. Apfel*, Civ. No. 98-2096, 2000 U.S. Dist.
LEXIS 3523, at *8 (D.N.J. Mar. 15, 2000) (citing *Kyser v. Apfel*,
81 F. Supp. 2d 645, 647 (W.D. Va. 2000) (declining to reduce the
plaintiff attorney's hours based on his billing in fifteen minute
increments where the defendants failed to specifically identify

*Bluebeard's Castle* v. *Hodge,* et al.
D.C. Civ. App. No. 2002-154
Memorandum Opinion
Page 41

any actions taken by the plaintiff's counsel that resulted in an artificial inflation of hours)).  We therefore find BCI's contention in this regard unavailing.

Notwithstanding our rejection of several of BCI's challenges, we conclude, for the reasons discussed earlier, that the trial court abused its discretion in its award of attorney's fees and costs with respect to certain itemizations in the Hodges' fee petition.  Accordingly, we will vacate the award and remand for further proceedings. *See, e.g., Planned Parenthood,* 297 F.3d at 266; *Lanni v. New Jersey,* 259 F.3d 146, 149 (3d Cir. 2001).

### IV.   CONCLUSION

For the foregoing reasons, we will affirm the Superior Court's denial of BCI's motion for summary judgment with respect to Counts I and II of the Hodges' complaint.  We will vacate the trial court's judgment for the Hodges and the Government, however, and remand this matter for further proceedings consistent with this opinion.[17]  We will also vacate the trial court's award of attorney's fees and costs and remand for further proceedings consistent with this opinion.  An appropriate order follows.

---

[17]  Given this disposition, we need not reach BCI's several other contentions.